943 F.2d 56
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen J. HEIG, Defendant-Appellant.
 No. 90-10399.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1991.
Decided Sept. 6, 1991.
As Amended Feb. 14, 1992.
 
 Before SCHROEDER, FLETCHER and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Stephen J. Heig appeals the district court's grant of the government's motion to withdraw a plea agreement after the government had assented to it but before the district court approved it. We affirm.
 
 FACTS
 
 3
 On February 9, 1990, Heig was indicted on five charges in connection with two burglaries that occurred on a Marine Corps Air Base. Because the crimes occurred on a United States military base, the charges were brought in federal court. In a plea agreement signed on April 20, 1990, defendant agreed to plead guilty to one count of burglary of an office structure (18 U.S.C. § 13; Hawaii Revised Statutes § 708-811);[1] one count of misdemeanor theft (18 U.S.C. § 661); and one count of trespass (18 U.S.C. § 1382).
 
 
 4
 At the change of plea hearing on April 27, 1990, in addition to filing the memorandum of plea agreement, defense counsel filed a motion for a deferred acceptance of guilty plea ("DAG plea"), a state plea procedure that allows the district court to defer acceptance of the guilty plea and, provided that defendant fulfills the terms of probation, later allows the guilty plea to be expunged from his or her record. Hawaii Rev.Stat. § 853-1. Before ruling on either motion, the district judge expressed doubt regarding whether the DAG plea motion was consistent with the parties' plea agreement. As the government attorney who negotiated the agreement was not present at the change of plea hearing, the judge, over defendant's objection, granted the government a continuance to determine its position on the issue.
 
 
 5
 At the next hearing, on May 2, 1990, the government moved to withdraw from the plea agreement based on its contention that the agreement had been violated by defendant's motion for a DAG plea. Over defendant's objection, the court granted the motion. Subsequently, the parties reached a new memorandum of plea agreement, which allowed Heig to make a conditional plea of guilty to the same counts but specifically waived Heig's right to be sentenced under Hawaii's DAG plea procedure. The agreement reserved Heig the right to appeal the district court's grant of the government's motion to withdraw from the previous plea agreement.
 
 DISCUSSION
 A.
 
 6
 On appeal, Heig first contends that the district court's actions on April 27, 1990 constituted impermissible judicial participation in plea agreement negotiations. Fed.R.Crim.P. 11(e)(1) states that "[t]he court shall not participate in any such [plea negotiation] discussions." "This rule has been interpreted as an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process." United States v. Adams, 634 F.2d 830, 835 (5th Cir.1981). However, the limitation on the judge's role extends only to discussions prior to the parties reaching a plea agreement. Once an agreement is reached and presented to the court, "Rule 11 contemplates an active role for the trial judge." Id.; see also Rule 11(e)(2); Advisory Committee Notes on Rule 11 (1974 amdt.) ("[T]he judge should not participate in plea discussions leading to a plea agreement. It is contemplated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open court.").
 
 
 7
 In the case at bar, the district judge's actions violated no Rule 11 proscription. The plea agreement at issue had been signed by both parties and presented to the court at the time of the judge's challenged involvement; the judge was not interfering in discussions that led up to the agreement's consummation. Moreover, by inquiring into the possible existence of a conflict between the motion for a DAG plea and the plea agreement and granting the continuance, the judge was not taking a substantive position on issues embodied within the plea agreement, but simply responsibly exercising his supervisory and procedural role with respect to ensuring the fairness of the plea agreement.
 
 B.
 
 8
 Heig also argues that the district court erred in granting the government's motion to withdraw the plea agreement because, according to Heig, the motion for a DAG plea did not violate the plea agreement. We need not decide this issue. Even if the motion for a DAG plea did not violate the plea agreement, we believe that the government possessed discretion to withdraw from the plea agreement at any time prior to its approval by the court.
 
 
 9
 A plea bargain is contractual in nature. United States v. Pomazi, 851 F.2d 244, 250 (9th Cir. 1988). "In determining whether a plea agreement has been broken, courts look to 'what was "reasonably understood by [the defendant] when he entered his plea of guilty." ' " United States v. Travis, 735 F.2d 1129, 1132 (9th Cir. 1984) (citations omitted).
 
 
 10
 Here, the plea agreement itself explicitly provided that it was of no effect until the court approved it. The agreement stated: "Should the court refuse to accept this Agreement it is null and void and neither party shall be bound thereto." In view of this language, neigher party could reasonably rely on the agreement prior to court approval. See United States v. Alvarado-Arriola, 742 F.2d 1143, 1145 (9th Cir. 1984) (prosecutor could not be said to have breached agreement nor could defendant claim reliance where agreement was implicitly conditioned on court approval and court refused to approve agreement). Thus, either party was free to withdraw from the agreement before the court approved it.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The burglary count involved a violation of state criminal law charged in federal court pursuant to the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13, which makes state criminal laws applicable in federal courts exercising territorial jurisdiction over U.S. military bases