[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13645
Non-Argument Calendar

_____

D. C. Docket No. 99-08125-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARLAND HOGAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 18, 2007)**

Before TJOFLAT, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

A jury convicted Garland Hogan of mail fraud, conspiracy to commit mail

fraud, conspiracy to launder proceeds of illegal activities, and engaging in monetary transactions with mail and wire fraud proceeds of a value greater than $10,000. We affirmed his convictions. United States v. Arroya, No. 02-10368, at 14–16, 53 (11th Cir. Jun. 24, 2004), vacated in light of Booker sub nom., Hogan v. United States, 126 S. Ct. 320 (2005), reinstated, No. 02-10368, at 3 (11th Cir. Jan. 5, 2007).

Before our decision issued, however, Hogan filed two successive motions for a new trial, each with a companion motion to appoint counsel. The district court denied the first new trial motion because it believed that it did not have jurisdiction to entertain the motion while Hogan's direct appeal was still pending. The court also denied the motion to appoint counsel since the new trial motion was no longer live.

Hogan appealed. We held in that second appeal the "district court erred when it determined that it lacked jurisdiction to entertain Hogan's motion [for a new trial] because his direct appeal was pending." United States v. Hogan, No. 04-12875, at 3 (11th Cir. May 17, 2006). We vacated the court's order and remanded for the court to exercise its jurisdiction "by either granting or denying the motion for a new trial, as the law and facts dictate." Id.

On June 9, 2006, the district court denied both new trial motions. On June

14, 2006, Hogan renewed his motions for the appointment of counsel. On June 19, 2006, Hogan filed a notice of appeal from: "the ORDER ON REMAND entered by the District Court and filed on June 9, 2006. This Final Order denied Hogan's pro se motions for new trial [DE 2222 and DE 2242]." The notice of appeal attached the court's order denying his new trial motions. The district court denied the renewed motions to appoint counsel on October 21, 2006.

## I.

Hogan first contends that the district court erred in denying his initial and renewed motions to appoint counsel. We do not have jurisdiction to consider this contention.

As to the first set of appointment motions, Federal Rule of Appellate Procedure 3(c)(1)(B) provides that a "notice of appeal must . . . designate the judgment, order, or part thereof being appealed." The appellant's failure to comply with Rule 3 is "fatal to an appeal." Smith v. Barry, 502 U.S. 244, 248, 112 S. Ct. 678, 682 (1992).

In this case, Hogan's notice of appeal mentioned only that he was appealing the denial of his motions for a new trial. It said nothing about the denial of his initial motions for the appointment of counsel. Hogan's brief, which did mention the appointment of counsel issue, may be construed as a notice of appeal as long as

3

it was filed within the appropriate time limits.  Id. at 248–49, 112 S. Ct. at 682.

But the brief was not filed within ten days of entry of the court's order.  See Fed.

R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be

filed in the district court within 10 days after . . . the entry of either the judgment or

the order being appealed.").  Thus, it cannot serve as timely notice that Hogan

intended to appeal the court's decision on the first set of appointment motions.

Hogan's notice of appeal is deficient as to the court's order on the renewed

appointment motion as well.  The notice of appeal was filed on June 19, 2006 and

did not mention of the court's order denying the renewed motion, which was

entered months later on October 21, 2006.  No new notice of appeal was filed

thereafter.

Hogan's brief also cannot be construed as his notice to appeal from the order

denying the renewed motion for appointment of counsel because the brief was filed

on October 19, 2006, two days before that order was entered.  "Rule 3(c) requires

that a notice of appeal designate an existent judgment or order, not one that is

merely expected or that is, or should be, within the appellant's contemplation when

the notice of appeal is filed."  Bogle v. Orange County Bd. of County Comm'rs,

162 F.3d 653, 661 (11th Cir. 1998).  At the time Hogan filed his brief, the court's

ruling on the renewed motion for counsel was expected, but not yet existent.

4

If Hogan wanted to appeal the order denying his renewed motion for the appointment of counsel, he needed to file a separate notice of appeal after that order was entered. Because he didn't, we lack jurisdiction to review the order here. We dismiss the part of his appeal seeking review of the district court's orders on the appointment of counsel motions.

## II.

Hogan also appeals the denial of his new trial motions. He argues that the district court abused its discretion in denying them because the government suppressed exculpatory evidence regarding witnesses called against him at trial, in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), and knowingly presented false testimony, in violation of Napue v. Illinois, 360 U.S. 264, 79 S. Ct. 1173 (1959), and Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972).[1]

We review the denial of a new trial motion based on a Brady violation for an abuse of discretion. United States v. Kersey, 130 F.3d 1463, 1465 (11th Cir. 1997). In order to obtain a new trial based on an asserted Brady violation, the

---

[1] Hogan attaches four exhibits to his brief that he says are relevant to his contention that the government suppressed evidence and presented knowingly false testimony at trial. We cannot consider this evidence for the first time on appeal. Fed. R. App. P. 10(a) (the record on appeal is limited to the original papers and exhibits "filed in the district court," the transcript of proceedings, and "a certified copy of the docket entries prepared by the district clerk"); see also Ross v. Kemp, 785 F.2d 1467, 1474–75 (11th Cir. 1986) ("We have refused to supplement the record when a party has filed supplemental material without requesting leave of this court or has appended material to an appellate brief without filing a motion to supplement.").

defendant must show that:

> (1) the government possessed evidence favorable to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different.

United States v. Vallejo, 297 F.3d 1154, 1164 (11th Cir. 2002). "Failure to meet any one of these elements will defeat a motion for a new trial." United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995).

Hogan argues that the government withheld evidence suggesting that members of the prosecution team believed that other attorneys, Norman Malinski and Norman Taplin, who had not been named in the indictment, were involved in the fraudulent viatical settlement scheme, and that, had the jury learned that the prosecution believed that others were involved, the blame would have been shifted away from Hogan. We agree with the district court that Hogan has failed to make out a Brady claim.

For one thing, the mental impressions of the government's counsel enjoy "almost absolute immunity," and have to be disclosed to the defendant only where "extraordinary circumstances" exist. See Williamson v. Moore, 221 F.3d 1177, 1182 (11th Cir. 2000) (citing the crime-fraud exception as an extraordinary example of when the work-product privilege may be pierced). Hogan has not

6

persuaded us that such extraordinary circumstances are present here.

For another thing, evidence that Malinski and Taplin were involved in the fraudulent scheme was not unknown to Hogan. Donnell Johnson, who worked with Hogan, testified at trial that those two attorneys participated in Financial Federated's viatical scheme.

And finally, even if the evidence had been withheld and was unknown to Hogan, there is not a reasonable probability that the outcome would have been different had the evidence been disclosed. The evidence introduced at trial showed that Hogan was extensively involved in the scheme. The following testimony constituted independent evidence of Hogan's knowledge of the fraud and intent to participate in the fraudulent viatical scheme: (1) Hogan's assistants testified that they never saw the underlying policies or medical records backing the investments; (2) Hogan's assistant testified that Hogan told him that he had seen the insurance policies underlying the investments, something Hogan later admitted was a lie; (3) one of the investors testified that Hogan advised him that he had personally reviewed the policies underlying the investment, the policies were current, and the period for contestation had expired; (4) the insurance agents, who sold viatical settlements on behalf of Financial Federated, testified that Hogan assured them that the investments were backed by life insurance policies, and that Hogan was

7

involved in acquiring those policies; (5) Hogan admitted that he lied to the grand jury and investors when he stated that he had seen the insurance policies; (6) Hogan admitted that his statements to investors, that he had supervised the presentation of claims to insurance companies and disbursed insurance maturities, were false; and (7) Hogan acknowledged that he misrepresented his role to investors.

"A different and more defense-friendly standard of materiality applies when the prosecutor knowingly used perjured testimony," as opposed to when the prosecutor suppressed favorable evidence in violation of the Brady rule. United States v. Alzate, 47 F.3d 1103, 1110 (11th Cir. 1995). A defendant may obtain a new trial on the basis of the government's use of false testimony in violation of Giglio if he can show that (1) the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony; and (2) the falsehood was material. Id. The falsehood is deemed to be material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. (quotations and citation omitted; emphasis in original).

Hogan contends that the government knew that two of its witnesses falsely testified. He claims that government knew that he was not an "insider" in the fraudulent scheme, as IRS Agent Klaus Hurme testified, and that William Page,

8

who owned his own viatical settlement business and testified that Financial Federated's practices were inadequate, was himself engaged in a fraudulent viatical scheme.

Hogan has not presented sufficient evidence that the government had reason to know that either witness' testimony was false. Agent Hurme expressed his opinion that Hogan was an insider after reviewing the documents sent to investors, all of which Hogan had signed certifying that everything reflected in the documents was correct, when it clearly wasn't. This was a sufficient basis to support Hurme's opinion, even if there was other evidence contradicting it. As for Page, the evidence shows that the government did not learn of the investigation against him until after Hogan's trial. Thus, it could not have known that his testimony was tainted by his own fraud investigation.

In any event, the evidence proving Hogan's fraudulent conduct and intent, which we have already described, was overwhelming. Hogan has not shown that the allegedly false testimony presented by the government was material—that is, that there was a reasonable likelihood the false testimony could have affected the jury verdict.

### III.

Hogan's final contention on appeal is that the district court erred in refusing

to hold an evidentiary hearing on his new trial motion. We review the court's evidentiary hearing decision for an abuse of discretion. See United States v. Massey, 89 F.3d 1433, 1443 (11th Cir. 1996).

We find none here. Most of the allegations in Hogan's motions would not support a new trial, even if they were supported by evidence. For those that would have, it is enough that the district court, having sat through the trial and being well acquainted with the facts of the case, rejected them based on the evidence and affidavits attached to the new trial motions and the government's response. See United States v. Schlei, 122 F.3d 944, 994 (11th Cir. 1997) ("In determining whether a motion for a new trial based on newly discovered evidence was properly denied, we are persuaded that the acumen gained by a trial judge over the course of the proceedings makes her well qualified to rule on the basis of affidavits without a hearing." (quotation and alteration omitted)).

**APPEAL DISMISSED IN PART AND AFFIRMED IN PART.**